ORIGINAL

Approved: _____
NICHOLAS W. CHIUCHIOLO
Assistant United States Attorney

Before:   HONORABLE HENRY B. PITMAN
          United States Magistrate Judge
          Southern District of New York

**19MAG 7586**

------------------------------------x
                                    :
UNITED STATES OF AMERICA            :   COMPLAINT
                                    :
         - v. -                     :   Violation of 21 U.S.C.
                                    :   § 846
GILBERTO LUCIANO VAZQUEZ, and       :
CARLOS PARRALES,                    :
                                    :   COUNTY OF OFFENSE:
              Defendants.           :   NEW YORK
                                    :
------------------------------------x

STATE OF NEW YORK          ) ss:
SOUTHERN DISTRICT OF NEW YORK )

   CHRISTOPHER GULINO, being duly sworn, deposes and says that he is a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), and charges as follows:

COUNT ONE
(Narcotics Conspiracy)

   1.   On or about August 13, 2019, in the Southern District of New York and elsewhere, GILBERTO LUCIANO VAZQUEZ and CARLOS PARRALES, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

   2.   It was a part and object of the conspiracy that GILBERTO LUCIANO VAZQUEZ and CARLOS PARRALES, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

   3.   The controlled substance that GILBERTO LUCIANO VAZQUEZ and CARLOS PARRALES, the defendants, conspired to distribute and

possess with intent to distribute was five kilogram and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge of the foregoing charge are, in part, as follows:

4. I am a Special Agent with HSI and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

5. Based on my participation in this investigation, including my review of reports and my conversations with other law enforcement officers, I am aware of the following, among other things:

    a. Based on my participation in this investigation, including my conversations with other law enforcement agents and my conversations with other individuals with knowledge relevant to this investigation, I and other law enforcement agents involved in this investigation had knowledge that a narcotics transaction was likely to take place in the vicinity of Doremus Avenue and Delancy Street in Newark, New Jersey--a dirt lot with numerous eighteen-wheeler tractor trailers parked on it (the "Lot")--on or about August 13, 2019.

    b. Based on that information, among other things, on or about August 13, 2019, law enforcement agents conducted physical surveillance in the vicinity of the Lot.

    c. On or about August 13, 2019, at approximately 10:20 p.m., law enforcement agents observed a black Mercedes sedan ("Vehicl-1"), in the vicinity of the Lot, conducting what appeared to them, based on their training and experience, to be

counter surveillance. Specifically, agents observed Vehicle-1 driving at a slow rate of speed on the streets surrounding the Lot, which is an industrial area that, at that time, had little other vehicle traffic. While Vechile-1 was conducting counter surveillance, agents observed Vehicle-1 flash its headlights at one of the unmarked law enforcement vehicles.

   d. After observing Vehicle-1 conduct counter surveillance for approximately twenty minutes, agents observed a black Toyota Camry ("Vehicle-2") exit the Lot. Both Vehicle-1 and Vehicle-2 departed the area at a high rate of speed.

   e. Thereafter, agents conducted separate traffic stops of Vehicle-1 and Vehicle-2. Law enforcement agents searched Vehicle-2 pursuant to the automobile exception to the Fourth Amendment's warrant requirement. Inside of Vehicle-2's trunk, agents found multiple coolers, which, collectively, contained approximately forty-two packages of a white powdery substance that appeared to the agents, based on their training and experience, to be cocaine. Agents subsequently field tested one of these kilogram packages, which tested positive for the presence of cocaine. Based on my conversations with other law enforcement agents, I am aware that the narcotics seized from Vehicle-2 weighed approximately 46.3 kilograms. A photograph of the narcotics seized from Vehicle-2 is depicted below:



    f. Thereafter, law enforcement agents arrested the driver of Vehicle-2, who was later identified as GILBERTO LUCIANO VAZQUEZ, the defendant. A Spanish-speaking agent advised VAZQUEz of his *Miranda* rights, in Spanish, and VAZQUEZ agreed to waive those rights.

    g. VAZQUEZ told agents, in substance and in part, that two other individuals ("CC-1" and "CC-2") picked up VAZQUEZ in Brooklyn, New York, earlier that evening, and CC-1, CC-2, and VAZQUEZ traveled together to the Lot. VAZQUEZ further told agents, in substance and in part, that, while at the Lot, VAZQUEZ observed CC-1 and CC-2 obtain the narcotics from a barrel (the "Barrel") and load them into coolers inside Vehicle-2's trunk. VAZQUEZ stated, in substance and in part, that the narcotics did not belong to him but CC-1 and CC-2 were supposed to pay VAZQUEZ approximately $200 to transport Vehicle-2, which contained the narcotics, to New York.

    h. VAZQUEZ further stated, in substance and in part, that he believed there were additional narcotics and a large quantity of cash located at the Lot. VAZQUEZ directed the agents to the Barrel from which CC-1 and CC-2 retrieved the narcotics. Inside the Barrel, agents observed numerous packages containing a white, powdery substance, which packages looked similar in appearance to the packages seized from inside Vehicle-2. Based on my conversations with other law enforcement officers who weighed these packages and field tested one of them, I am aware that the packages obtained from the Barrel weighed approximately 25.78 kilograms field tested positive for the presence of cocaine.

    i. VAZQUEZ further stated, in substance and in part, that he knows CARLOS PARRALES, the defendant, that he observed PARRALES speaking with CC-1 and CC-2 at the Lot, and that he was surprised to see PARRALES at the Lot because he did not think PARRALES was involved.

    j. At or around the same time agents stopped Vehicle-2, other law enforcement agents stopped Vehicle-1. Agents placed Vehicle-1's driver, who was later identified as PARRALES, under arrest.

    k. While conducting a search incident to arrest, agents located four cellphones inside of Vehicle-2. PARRALES stated, in substance and in part, that one of the cellphones was his and he was unaware who owned the other cellphones.

WHEREFORE, I respectfully request that GILBERTO LUCIANO VAZQUEZ and CARLOS PARRALES, the defendants, be imprisoned or bailed as the case may be.

_____
CHRISTOPHER GULINO
Special Agent
Homeland Security Investigations

Sworn to before me this
14th Day of August, 2019

_____
THE HONORABLE HENRY B. PITMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK